**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 10 2000**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

LENA B. FERGUSON,

        Petitioner-Appellant,

v.

DAVID MCKUNE, Warden;
ATTORNEY GENERAL OF THE
STATE OF KANSAS,

        Respondents-Appellees.

No. 99-3214
(D.C. No. 95-CV-3323)
(D. Kan.)

ORDER AND JUDGMENT   *

Before **TACHA** , **EBEL** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Lena B. Ferguson appeals the district court's dismissal without prejudice of her 28 U.S.C. § 2254 habeas petition for failure to exhaust state remedies. The district court granted her a certificate of probable cause and permission to proceed in forma pauperis. [1] For the reasons that follow, we reverse and remand.

The facts have been set forth at length by the Supreme Court of Kansas and the federal district court and will not be reiterated here. See State v. Ferguson, 864 P.2d 693, 695-96 (Kan. 1993); Fed. R., File #2, Doc. 55 (Memorandum and Order dated June 7, 1999). In brief, petitioner was convicted by a Kansas state court jury in 1991 for aggravated arson and felony murder of her ex-husband, and was sentenced to fifteen years to life with a concurrent term of life imprisonment, respectively. Petitioner was represented by Ronald Wurtz, then with the Kansas Public Defender's Office, in all pre-trial, trial, and post-trial proceedings, up to her appeal. Petitioner's conviction was affirmed by the Kansas Supreme Court on direct appeal, see Ferguson, 864 P.2d 693, in the context of which she was represented by a different attorney, also with the Kansas Public Defender's Office.

---

[1]     Pursuant to the Supreme Court's recent decision in Slack v. McDaniel, 120 S. Ct. 1595, 1602-03 (2000), petitioner would now be required to obtain a certificate of appealability.

Petitioner then filed this habeas petition in federal district court, claiming the state court: (1) violated her right to due process when it found her competent to stand trial; (2) denied her right to counsel and due process of law by denying her counsel's motion to withdraw (the Sixth Amendment claim); and (3) violated her Fifth Amendment privilege against self incrimination by admitting certain of her statements. In support of her Sixth Amendment claim, petitioner submitted two affidavits, one from herself and one from Mr. Wurtz. Based in part on these affidavits, respondents argued in their answer that petitioner failed to exhaust her state remedies as to her ineffective assistance of counsel claim.

Thereafter, the magistrate judge held an evidentiary hearing on the exhaustion issue and recommended that petitioner's habeas petition be dismissed in its entirety for her failure to exhaust her Sixth Amendment claim. The district court issued a decision adopting the magistrate judge's recommendation. See Fed. R., File #1, Doc. 50 (District Court Order dated March 12, 1999). Petitioner then moved to amend or alter judgment. The district court issued a second, more comprehensive decision, reaching the same result and clarifying its previous order. [2] Id., File #2, Doc. 55.

---

[2] In the first decision, the district court stated that petitioner's additional evidence presented in the context of her habeas proceedings was not addressed in the Kansas Supreme Court's decision and "[t]hus, it does not appear that this additional information was considered during petitioner's direct appeal." Fed. R.,

(continued...)

On appeal, petitioner argues that she exhausted her state remedies on her Sixth Amendment claim because no "new" evidence or facts were presented at her § 2254 evidentiary hearing, Mr. Wurtz repeatedly raised the issue of their irreparable breakdown to the trial court, and she presented her Sixth Amendment claim to the Kansas Supreme Court on direct appeal. In addition, petitioner argues that she will be barred from collaterally attacking her conviction in a state proceeding, pursuant to Kan. Stat. Ann. § 60-1507, because she has already raised her Sixth Amendment claim to the Kansas Supreme Court on direct appeal.

"In reviewing the denial of a habeas corpus petition, we review the district court's . . . legal conclusions de novo." Rogers v. Gibson, 173 F.3d 1278, 1282 (10th Cir. 1999), cert. denied, 120 S. Ct. 944 (2000). The principles of federal-state comity require that a habeas petitioner exhaust available state court remedies before seeking redress in federal court. See Picard v. Connor, 404 U.S. 270, 275-76 (1971); see also 28 U.S.C. § 2254(b)(1)(A). In order to be fairly presented, the claims raised to the state appellate court must be the "substantial equivalent" of the claims raised in the federal habeas petition. See Picard, 404 U.S. at 278. If there are unexhausted state remedies for any claim in the

[2](...continued)
File #1, Doc. 50 at 7. The district court granted petitioner's motion to amend or alter judgment, based on petitioner's argument that it had erred in making the above statement.

-4-

habeas petition, the district court must dismiss the entire mixed petition. Rose v. Lundy, 455 U.S. 509, 510, 522 (1982). Dismissal is not required, however, if the new evidence uncovered in the context of a habeas proceeding supplements rather than fundamentally alters the claim considered in the state courts. See Vasquez v. Hillery, 474 U.S. 254, 260 (1986); see also Jones v. Hess, 681 F.2d 688, 694 (10th Cir. 1982) (explaining the claim is not exhausted if it is "in a significantly different and stronger posture than it was when the state courts considered it").

"[T]he Supreme Court has held that if a petitioner 'failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred' the claims are considered exhausted and procedurally defaulted for purposes of federal habeas relief." Thomas v. Gibson, No. 99-5030, 2000 WL 986587, at *5 (10th Cir. July 18, 2000) (quoting Coleman v. Thomas, 501 U.S. 722, 735 n.1 (1991)). "On habeas review, this court does not address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998).

Here, petitioner did raise her Sixth Amendment claim to the Kansas Supreme Court. The issue is whether her claim on habeas is the same as that

-5-

presented to the Kansas Supreme Court. This court's decision in Demarest v. Price, 130 F.3d 922 (10th Cir. 1997), is instructive. In Demarest, this court considered whether the petitioner exhausted his ineffective assistance of counsel claim when he presented evidence at the habeas proceedings (comprising new expert testimony and changed testimony from two key witnesses) that he had not presented to the state court. In holding that he had not exhausted the claim, this court started with the established premise that "'[f]air presentation' of a prisoner's claim to the state courts means that the substance of the claim must be raised there." Id. at 932. This court then went on to explain that "although a habeas petitioner will be allowed to present 'bits of evidence' to a federal court that were not presented to the state court that first considered his claim, evidence that places the claims in a significantly different legal posture must first be presented to the state courts." Id. (quotations omitted). Based on the quantum and quality of the petitioner's evidence, this court concluded that the evidence did alter and strengthen his claim. See id. at 933.

Accordingly, whether petitioner exhausted her Sixth Amendment claim turns on a comparison between what she presented to the state courts and what she presented to the federal district court, as well as the impact of any difference in the presentation. We discuss below the reasons Mr. Wurtz gave to the trial court for his motions to withdraw, Mr. Wurtz's and petitioner's testimony in the

-6-

context of the state hearing on that motion, petitioner's brief to the Supreme Court of Kansas, and that court's decision. We then compare this with the testimony elicited in the course of these habeas proceedings.

Mr. Wurtz's motions to withdraw in the trial court

Mr. Wurtz sought to withdraw as counsel repeatedly and, hence, the trial record is replete with his statements detailing the breakdown in communications between petitioner and himself. Mr. Wurtz first moved to withdraw on April 16, 1991, stating in his motion that petitioner "has no confidence in her present counsel or in any counsel who is employed by the Public Defender's office. Said conflict and absence of confidence is so serious that the attorney-client relationship is so adversely affected that there is effectively no counsel for the accused." State R., Vol. I at 91. Petitioner's distrust, thus characterized, became the touchstone of the trial court's denial of the motion to withdraw as well as the Kansas Supreme Court's rejection of petitioner's Sixth Amendment claim. As discussed below, however, there were additional reasons underlying petitioner's inability to cooperate with her trial counsel. The additional reasons, and their further exposition in these habeas proceedings, are critical to our state exhaustion analysis.

At a motion hearing on April 17, 1991, Mr. Wurtz's opening remarks to the trial court again referenced petitioner's feeling that state employees have an

"inherent conflict of interest." State R., Tr. of Mtn. to Withdraw (April 17, 1991) at 4. He went on, however, to characterize her antipathy as "deeper than that" but stated that he was "unable to enlighten the Court as to what [was] the problem." Id. He stated that in his "professional opinion she has a defense in this case which a jury should be allowed to decide." Id. at 5. Thereafter, the trial court heard testimony from petitioner, during the course of which, she gave the following reasons for her inability to work with Mr. Wurtz: (1) she did not feel that she could trust anyone who works for the state; see id. at 7-9; (2) she felt that Mr. Wurtz let her sit in jail for three months without seeking and obtaining a bond reduction, see id. at 9; (3) she did not believe Mr. Wurtz was honest with her, see id.; (4) she felt Mr. Wurtz had not told her everything she needed to know, see id. at 10; and (5) she felt that Mr. Wurtz had not gotten in touch with the people that he should have, see id. The trial court then denied the motion orally, finding that petitioner's assertions were very general, her distaste for Mr. Wurtz because he was an attorney in the state's employment was not dispositive, that Mr. Wurtz was competent, effective, professional, well-trained and extremely experienced, and that petitioner was not entitled to an attorney of her choice. See id. at 15-18.

Subsequently, petitioner was hospitalized and evaluated for her competency to stand trial. While hospitalized, she was under the care of Dr. Gilbert Parks.

-8-

In petitioner's motion to determine competency, Mr. Wurtz made the following

statements:

> The only method counsel has of trying to communicate with
> his client is by passing information to Dr. Parks. Dr. Parks is not
> a lawyer, and counsel cannot be personally satisfied that [petitioner]
> is receiving proper legal information with which she can make the
> decisions that are the client's to make, such as whether to testify or
> to enter plea negotiations.
> Counsel believes [petitioner's] mental condition precludes her
> from thus assisting in her defense.

State R., Vol. I at 107-08.

On November 13, 1991, shortly after petitioner was discharged from the

hospital, the trial court held a hearing on various outstanding motions. Mr. Wurtz

again moved to withdraw as counsel. In support of the motion, he stated as

follows:

> Your Honor, my request to withdraw as counsel is somewhat
> tied up with the [competence] report, as the Court knows the contents
> of that report. I respectfully request permission to withdraw from
> this case as counsel for Ms. Ferguson for the reason that although the
> doctors think she's able to -- she's able to cooperate with counsel,
> I have my own lay suspicions and sincere beliefs that she cannot
> cooperate with me.
> Since her release from the Larned State Security Hospital,
> I have communicated with her physician, Doctor Gilbert Parks, and
> that, as far as I know, is the only communication directly that I had
> with Ms. Ferguson until actually yesterday when I spoke with her
> briefly on the phone. Ah, I had passed several requests through
> Doctor Parks that she come in and talk to me. She has not done so.
> I do not know the reasons why except that she has a deep and abiding
> distrust of everything I do. She feels, Your Honor, that everything
> she tells me, that I pass on to the District Attorney. And the way she
> presents herself, I think she sincerely believes that. The district

attorney can tell you whether it's true or not, which, of course, it's not. But she believes it. If she firmly believes that, it follows that she would be in fact protecting herself by not telling me what I need to know in order to put on a defense.

Your Honor, back when I first represented her, within the first month, we had communication. During that communication, she provided me with some details which I needed in order to begin working up a defense. That, however, was before I had completely investigated it myself. And as the Court may understand, without me releasing any confidences in this request, questions have come up which I believe that only Lena Ferguson can help me deal with. She cannot do that. She says she cannot do that because she does not trust me.

One of the grounds for allowing withdrawal of counsel is that the attorney-client relationship has deteriorated to the point that it is effectively no relationship at all. When I spoke with Ms. Ferguson yesterday over the mix-up, and as I advised the Court, my failure to make sure she was notified of the hearing set yesterday, she very clearly told me both today and yesterday, that she believed that I had done that in order to make her look bad. In her demeanor and in her statements, she appears to be sincere in that.

Your Honor, a defense lawyer's relationship with his client is the key to a good defense, not just a competent defense. It's certainly a key to a competent defense. But really, in this case, it's a key to a defense at all.

. . . . In the present state of our relationship, as I see it, there being no relationship, I don't believe I can effectively present a defense on her behalf. And I sincerely believe that.

As I have been preparing for this intensively for the last week after the Court has advised us of the trial-- I was prepared once before, but it takes some time to get back up to speed again-- there are questions that I fear without her having some trust in me, that I will ask one wrong question or say one wrong thing that I would know to avoid if she could communicate with me.

. . . . Ah, I am totally frustrated and I hope that doesn't get into it. But when I get frustrated, that's a side event that causes me not to concentrate too. And I worry about how effective I can be under these circumstances. And I implore this Court to consider appointing counsel knowing that it would necessarily result in another postponement of the trial, but I think fairness requires that.

State R., Tr. of Mtn. Hearing, Vol. I (Nov. 13, 1991) at 7-10.

Mr. Wurtz went on to state that the issue of his status as a state attorney was "not the overriding reason or subject" discussed by petitioner and himself and "[s]he has much-- many more complaints about things that have happened in the past." Id. at 13. He explained that it was his sense that her distrust "is deeper than simply who is paying the bill." Id. at 14. Later on in the hearing, petitioner asked to be excused from the proceedings. See id. at 28-29. In light of petitioner's request, Mr. Wurtz renewed his motion to withdraw, stating that it was "extremely dangerous for a defense lawyer to consent to his client leaving when there may be a question that needs to be answered" and that her request was a "further demonstration . . . of the fact that [their] relationship is such that she cannot help [him]." Id. at 29. The trial court denied the motion to withdraw and allowed petitioner to absent herself from the motion hearing.

On November 18, 1991, Mr. Wurtz again moved to withdraw. In his brief, he stated that:

> [S]ince [petitioner's] release from jail she has consistently refused to discuss the matters which have resulted in the charges now pending against her. She has expressed the belief that present counsel is in league with the authorities who seek to punish her for the events which are the foundation for this action. She currently refuses to even come to counsel's office to permit counsel to explain the trial process, seek her input on jury selection, discuss the theory of the case which must be presented in light of her refusal to testify, and generally to assist counsel in even the most rudimentary matters.

-11-

State R., Vol. I at 137. In addition, Mr. Wurtz stated that, in order to preserve client confidences he could not fully disclose the "incidents supporting his belief" that he could not provide petitioner "constitutionally valid assistance under the conditions" that then existed. Id. at 139.

The trial court denied the motion orally at a motion hearing held on the morning of November 18, 1991, the first day of trial. At the hearing, Mr. Wurtz stated that he had nothing to add factually to his previous motions, see State R., Tr. of Jury Trial, Vol. I (Nov. 18, 1991) at 6, but that in his final preparation for trial, he did not have petitioner's assistance in clarifying some questions in order to prepare for cross examination, see id. at 7. The trial court again denied the motion and trial proceeded, culminating in a guilty verdict. In petitioner's motion for a new trial, Mr. Wurtz again raised his inability to be effective counsel. See State R., Vol. I at 155.

Proceeding before the Kansas Supreme Court

Petitioner raised her Sixth Amendment claim to the Kansas Supreme Court on direct appeal of her conviction. See Ferguson, 864 P.2d at 696. In her brief to that court, she raised five claims, the first of which was her contention that the trial court deprived her "of her right to counsel and a fair trial when it denied counsel's repeated motions to withdraw based on a total breakdown in communications between [petitioner] and her court-appointed counsel, which

-12-

resulted in counsels' [sic] inability to present a defense to the charge of felony murder and aggravated arson." Br. of Appellant in the Supreme Court of Kansas at 8. In support of her claim she stated that she and Mr. Wurtz had "an irreconcilable conflict based on [her] distrust and dislike of him," and Mr. Wurtz was not able to present what he believed was a potential claim of self defense. Id. at 10. Petitioner then reiterated Mr. Wurtz's and her testimony at the hearing before the trial court on the motion to withdraw, including petitioner's testimony to the effect that "[s]he distrusted him due to his failure to seek bond reduction for three months, his lack of honesty about the case, his failure to communicate with her about the case, and his failure to contact people she asked him to contact," id. at 12; detailed the sequence of events following the hearing, including petitioner's competency hearing, the trial court's finding that she was competent to stand trial, see id. at 15-16; and described Mr. Wurtz's continued efforts to withdraw , see id. at 16-19. The petitioner's appellate brief later stated that the "distrust [between them] stemmed from . . . his failure to communicate with [petitioner] as well as other reasons which may have stemmed from her long term trauma." Id. at 39. In addition to petitioner's thorough recitation of the events in the trial court relating to Mr. Wurtz's attempts to withdraw, and the reasons underlying those attempts, the Kansas Supreme Court had the trial record before it.

In the Kansas Supreme Court's decision upholding petitioner's conviction, the court iterated her claim as follows:

> [Petitioner] first contends on appeal that her Sixth Amendment right to counsel and her Fourteenth Amendment right to a fair trial were violated because the district court would not permit her appointed attorney to withdraw.  She asserts that she "had a viable claim of self defense."  The contention is that her defense went undeveloped and unpresented due to the irreconcilable conflict between Ferguson and counsel.

Ferguson , 864 P.2d at 696  .  The Kansas Supreme Court then went on at some length concerning the Sixth Amendment claim, laying out in detail the history of Mr. Wurtz's motions to withdraw and discussing the relevant cases.        See id. at 696-703.  In rejecting her Sixth Amendment claim, the court's analysis, for the most part, concentrated on petitioner's concern that a government-paid attorney was inherently biased, and concluded that it was her own failure to cooperate that caused the breakdown in communication.      See id. at 699-703.

### Testimony in the federal habeas proceedings

The magistrate judge held an evidentiary hearing on petitioner's § 2254 petition on November 13, 1998.  At the hearing, Mr. Wurtz, petitioner, and Dr. Herbert Modlin [3] testified.  In addition, both Mr. Wurtz and petitioner submitted affidavits to the district court in support of the petition.  Since their affidavits are repetitive of their hearing testimony, their affidavits are not

---

[3]     Dr. Modlin's testimony is not relevant to the exhaustion issue before us.

-14-

addressed separately. Mr. Wurtz's and petitioner's testimony at the hearing results in a more complete understanding of the nature of their relationship and why it deteriorated than that culled from the state record. The relevant inquiry, however, is whether their testimony fundamentally altered petitioner's Sixth Amendment claim, or merely supplemented that claim. See Vasquez, 474 U.S. at 260.

The district court found that petitioner did not exhaust her claims in the state courts. It based its decision on Mr. Wurtz's testimony that:

> (1) petitioner was unhappy with his efforts, or lack thereof, to either arrange for her son to be shipped back from Saudi Arabia or to establish a way for her to communicate with her son; (2) petitioner had refused to give him information relating to her relationship with her ex-husband and the events surrounding the fire so that he could not develop a self-defense theory or a defense based upon battered women's syndrome; (3) as a last resort he yelled at petitioner and called her names in an attempt to shock her into assisting with her defense; however, he believed that he actually harmed their relationship; (4) he could not engage in plea negotiations because the relationship was so damaged that she would not give him authority to do so; and (5) he [provided] ineffective assistance of counsel.

Fed. R., File #2, Doc. 55 at 10. The district court also described petitioner's testimony as follows:

> She stated that she was upset with Ronald Wurtz because he did not share her concerns about her son. She further testified that she did not believe that Wurtz could help her because she thought Wurtz was telling the District Attorney everything that she told him. In addition, she stated that the confrontational tactics used by Wurtz scared her and reminded her of her ex-husband. Finally, she stated

-15-

that she would not discuss personal details with Wurtz because she did not trust him.

Id. at 10-11. The court found that "[n]one of this information, other than the fact that petitioner would not discuss the case with Ronald Wurtz, was presented to the trial court or to the Kansas Supreme Court." Id. at 11. "There were no specific allegations, such as those listed above, which would have supported her general claim" and the April 17, 1991 hearing on the motion to withdraw "indicated that the main reason petitioner was unable to trust her trial counsel was because he was paid by the state." Id. The court then concluded that "these specific, additional reasons for petitioner's distrust of her attorney were not in the record that was before the Kansas Supreme Court" and, "[a]s a result, the Kansas Supreme Court concluded that petitioner chose to refuse to cooperate with her appointed counsel and affirmed her conviction without the benefit of the evidence which was presented to this court." Id. at 11-12.

To the contrary, a review of the state record, as presented above, reflects that many of petitioner's concerns were either raised before the trial court by Mr. Wurtz or by petitioner to the Kansas Supreme Court. Those that were not, do not change the character of her claim. [4] Accordingly, while perhaps not all of

_____

[4] We note that petitioner did not assert in the state courts that: (1) she was unhappy with Mr. Wurtz because he did not make enough of an effort to contact her son who was in Saudi Arabia at the time; and (2) Mr. Wurtz's last ditch effort

(continued...)

-16-

these concerns were as fully fleshed out as they were in the context of the habeas proceedings, they were sufficiently before the Kansas Supreme Court.

The district court relied heavily on this court's decision in Demarest, 130 F.3d 922, to guide its analysis. However, under these circumstances–i.e., where the reasons underlying an ineffective assistance of counsel claim were sufficiently before the state courts, but only more fully detailed in federal habeas proceedings–this court's reasoning in Demarest does not compel a finding of nonexhaustion. In particular, the additional evidence, although potentially strengthening petitioner's Sixth Amendment claim to some extent, does not so fundamentally alter her claim that it is rendered distinct from that presented to the state courts. In contrast, in Demarest, the petitioner presented radically new evidence on habeas which led to this court's conclusion that his "ineffective assistance of counsel claim [was transformed] into one that was significantly different and more substantial." Demarest, 130 F.3d at 939 (quotations omitted).

------

[4](...continued)
to get her to cooperate by yelling at her and calling her names reminded her of her ex-husband. As to the first, this falls within the rubric of her criticism of Mr. Wurtz that he did not contact the people as she requested. As to the second, petitioner aptly states in her brief to this court that her relationship with Mr. Wurtz was already severely compromised as evidenced by his need to resort to such tactics. Consequently, this is yet an additional example of the extent to which their relationship had deteriorated and, as such, does not alter her claim nor strengthen it to any substantial degree.

-17-

In an effort to fall within Demarest's ambit, respondents argue petitioner transformed her Sixth Amendment claim from one based on distrust of an attorney paid by the state, to one mired in the details of petitioner's poor relationship with Mr. Wurtz. Our review of the record does not bear this out. Mr. Wurtz clearly, repeatedly, and emphatically informed the trial court that there were other reasons petitioner did not trust him and would not cooperate with him. Indeed, he stated that petitioner's distrust of state-paid attorneys was not the overriding reason for their bad relationship. Rather, it was the Kansas courts that focused the attention on petitioner's distrust of an attorney in the state's employ. The fact that the Kansas courts chose to concentrate on petitioner's professed distrust of such an attorney, however, is not dispositive of our exhaustion analysis. We conclude that petitioner exhausted her Sixth Amendment claim in the state forum. Accordingly, we do not reach the question whether petitioner would be barred from pursuing her Sixth Amendment claim in a state collateral proceeding because she raised it on direct appeal.

For the foregoing reasons, we REVERSE and REMAND the case to the

district court with directions to that court to consider petitioner's habeas petition.


Entered for the Court


David M. Ebel
Circuit Judge