McCONNELL, Circuit Judge,
concurring.
I agree with the majority that the circumstances of this case do not suggest “actual vindictiveness” on the part of the sentencing judge. I also agree with the majority’s analysis of the narrow legal question raised by the higher sentence on remand and therefore join the opinion. But there are reasons to think that our current system of sentencing has a systematic bias in favor of higher sentences on remand from successful appeals, even successful appeals by the defendant. If so, this presents troubling questions of fairness and possibly even of due process, *841 wholly apart from any “actual vindictiveness” on the part of district judges.
In any complex system — and the Sentencing Guidelines surely qualify — there is a not-insubstantial chance that those who administer the system will make mistakes, overlooking potentially applicable adjustments and enhancements. Odds are that most of these mistakes are to the benefit of the defendant, because the vast majority of Guidelines provisions relate to upward enhancements rather than downward adjustments. If a potentially applicable Guidelines provision is overlooked, most likely that means the defendant will receive a lower sentence than if the calculation were performed flawlessly. Add to this the possibility that the defendant, who is usually intimately familiar with his own history in a way the prosecution is not, will be more assiduous in fly-specking the pre-sentence report (PSR) than prosecutors.
In this case, for example, the original PSR mistakenly grouped the defendant’s fraud and money-laundering offenses and overlooked applicable enhancements based on intended loss, more than minimal planning, use of sophisticated means, unlawful use of identification, obstruction of justice, and impersonating a government employee. These oversights cumulatively resulted in an advisory Guidelines range nineteen months lower than it should have been (measuring from the bottom of the range). During the initial sentencing, the government either did not notice or chose not to object to these errors, and the district court adopted the erroneous PSR calculations in determining the advisory Guidelines range. Unless this case is aberrational, there must be many similar cases where defendants receive the benefit of a less-than-perfect Guidelines calculation.
It follows that, if those who administer the system have occasion to scour the Guidelines a second time with respect to a particular defendant, they often will discover reasons why the advisory Guidelines range should be increased. Whenever a sentence is appealed and reversed, such an occasion will present itself. That is what happened here: on appeal, and then after remand, the government re-examined the PSR calculations, objected to the errors, and obtained a higher sentence. This suggests that, after reversal on appeal, many defendants will end up worse off even though they were the victors in the appellate court.
The prospect that the defendant will end up worse off is not primarily a product of vindictiveness, but of complexity. For the same reason that manual recounts of punched ballots in Florida in 2000 tended to produce more valid votes and that audits of tax returns tend to discover additional tax liability, a redo of a Guidelines calculation is likely to produce a higher range the second time around. I am reminded of my tenth-grade algebra teacher, who had a standing policy that she would correct exam-grading errors only if the complaining student consented to have the entire exam regraded. I never felt confident enough to run the risk. Defendants must frequently feel the same.
If these speculations are valid, defendants may be wary of appealing lest, on remand, the probation office and the prosecution revisit the Sentencing Guidelines calculations and calculate a higher range. This opportunity for sentence recalculation is effectively a tax — payable in months or even years of additional prison time — on taking an appeal. This strikes me as unfair to the defendant and bad for the system. Appeals serve an important function, and we should not create disincentives for criminal defendants to appeal when they have meritorious grounds for doing so.
*842 At this point, however, the existence of such a “tax” on appeals is purely speculative. The Sentencing Commission, which is statutorily charged with keeping relevant statistics for the purpose of improving sentencing, 28 U.S.C. § 995(a), does not collect or analyze data on changes in the length of sentencing after remand. I urge it to do so. If my hunch that there are systematic tendencies toward increases is correct, it would also be useful to know whether these are the product of recalculations by probation officers, objections by the prosecution, or exercises of Booker discretion by district courts. Empirical study of these matters by academic researchers would be illuminating.
One possible remedy to this problem, if it turns out there really is a problem, is to apply principles of “law of the case” to sentencing determinations. In other words, the prosecution would be required to raise any objections to the PSR in the initial sentencing; if the initial sentence is reversed, the remand would be limited to correcting the error identified on appeal and would not extend to de novo recalculation of the entire advisory Guidelines range.
This is similar to the way appeals work in other legal contexts. As a general rule, “once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case.” Grigsby v. Barnhart, 294 F.3d 1215, 1218 (10th Cir.2002) (quoting Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah, 114 F.3d 1513, 1520 (10th Cir.1997)). According to this doctrine, lower court rulings not contested on appeal are abandoned — they are assimilated into the law of the case — and may not be revisited upon remand absent compelling circumstances. See Demarest v. Price, 130 F.3d 922, 942 n. 9 (10th Cir.1997).
There is no doctrinal reason why sentencing calculations cannot be subjected to this rule. These calculations are expressly found by the trial court based on evidence presented to it. Tellingly, we do not allow trial courts to revisit other legal or factual findings on remand when, as in the case of sentencing calculations, the predicate evidence for those findings was available at the time of the original hearing. See United States v. Monsisvais, 946 F.2d 114, 117 (10th Cir.1991). If the government recommends a miscalculated sentence at the trial level, and fails to challenge or otherwise correct its mistakes on appeal, law-of-the-case doctrine suggests they should not be allowed to take a second try on remand.
Even if such an approach were not adopted wholesale, individual appellate panels might consider phrasing their remands in sentencing decisions more narrowly. Not every remand for re-sentencing need be de novo. Appellate courts are entitled to direct lower courts to address only specific issues on remand. See United States v. Webb, 98 F.3d 585, 587-88 (10th Cir.1996); United States v. Smith, 116 F.3d 857, 859 (10th Cir.1997) (holding that on remand “the district court is free to reconsider the sentencing package de novo unless the appellate court has specifically limited the district court’s discretion on remand”).
Finally, district courts would do well to take the possibility of an “appeal tax” into account in their exercise of Booker sentencing discretion. Title 18 U.S.C. § 3553(a)(6) instructs courts to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. If it is true that defendants whose PSRs have been recalculated as a result of appeal and remand systematically receive higher sentences than those who do not, this provi *843 sion suggests that district courts should take notice and do something to counter it.